UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RANDY LEE LASSITER, JR., #1490582

Petitioner,

v.

CONSOLIDATED Civil Action Nos.

(Lead case) 2:23cv349 and 2:23cv368[1]

CHADWICK DOTSON,[2]
Director of the Virginia
Department of Corrections,

Respondent.

## REPORT AND RECOMMENDATION

In this habeas petition under 28 U.S.C. § 2254, Virginia inmate, Randy Lassiter, raises a variety of claims attacking his conviction and 10-year sentence on robbery charges in the Norfolk Circuit Court. Although timely, Lassiter's petition includes many claims procedurally defaulted in state court, and he has failed to plausibly allege any grounds to excuse his default. With regard to the claims that he properly exhausted in state court, his petition fails to establish grounds for federal review under the deferential standard which applies to the state courts' merits decisions. Accordingly, as set out in detail below, this Report recommends the court GRANT Respondent's Motion to Dismiss, (ECF No 37), and DISMISS the Petition, (ECF No. 1),[3] with prejudice.

---

[1] The court consolidated Case Nos. 2:23cv368 and 2:23cv349 after finding that both habeas actions were filed by Lassiter and included identical or nearly identical pleadings. See Case No. 2:23cv368 (ECF No. 7). The court directed that all current and future filings proceed under the first habeas action using Case No. 2:23cv349. Id.

[2] Since the filing of the case, Chadwick Dotson was appointed as the Director of the Virginia Department of Corrections. He is therefore automatically substituted as a party pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[3] Lassiter's federal habeas petition was filed in the member case. For purposes of this Report, Lassiter's Petition will be denominated "Petition (ECF No. 1)."

## I.    **FACTUAL AND PROCEDURAL HISTORY**

Lassiter is confined pursuant to a final order entered on March 26, 2020, by the Circuit

Court for the City of Norfolk, convicting him of robbery in violation of Va Code § 18.2-58, and

wearing a mask to conceal his identity in violation of Va Code § 18.2-422. Resp't. Br. Supp. Mot.

Dismiss, Ex. 1 Circuit Court of the City of Norfolk Sentencing Order ("Sentencing Order") (ECF

No. 39-1, at 1).  Lassiter was sentenced to ten years with no time suspended. Id. at 3.

### A.    **State Court Appeals**

Lassiter appealed his conviction to the Court of Appeals of Virginia, arguing that "the court

erred by allowing testimony from a rebuttal witness 'because the Commonwealth's mid-trial Brady

disclosures violated appellant's due process rights and deprived him of a fair trial.'"  Resp't Br.

Supp. Mot. Dismiss, Ex. 2 Court of Appeals of Virginia Opinion (ECF No. 39-2, at 1).  The Court

found no error and affirmed the Circuit Court's judgment. Id.

In reaching this decision, the Virginia Court of Appeals summarized the evidence presented

at trial:

> On January 3, 2018, Pamela Williford and Juanita Amin were working the closing
> shift at a Tinee Giant convenience store in Norfolk.  At approximately 11:25 p.m.,
> appellant [Lassiter] entered the store wearing a black hoodie with the hood up and
> a mask or scarf over the bottom half of his face. He was carrying a silver handgun
> and a black duffel bag.
>
> Appellant pointed the gun at Williford and ordered the women to go behind the
> counter. He told Williford to "give him all the money now." Williford opened the
> cash register, and appellant reached over the counter, took cash from the register
> drawer, and stuffed it into his duffel bag. He demanded more money, telling the
> woman that "wasn't all [of] the cash." Williford retrieved a concealed cash register
> drawer and placed it on the counter.  Appellant removed the money from that
> drawer and demanded cigarettes and cigars.  After Williford and Amin put
> cigarettes and cigars into appellant's duffel bag, he left the store.
>
> Williford immediately called the police. Detectives Jose Oyola and Alexander Kay
> of the Norfolk Police Department arrived at the store and questioned Amin and
> Williford separately.  The women provided similar descriptions of the robber.

2

According to Williford, appellant was a "regular customer" of the Tinee Giant; in fact, she had seen him in the store the day before.

Five days later, on January 8, Williford saw appellant in the store again. She identified appellant as the robber to her manager. The police subsequently obtained the store's surveillance footage, which included footage of the robbery as well as footage of appellant in the store on January 2 and 8.

On February 7, appellant's girlfriend, Shawnda McClease, informed Detective Kay that she saw a news report of the robbery and believed that appellant was "the individual . . . that robbed the Tinee Giant." McClease told the detective that appellant was at her residence on the night of the robbery and left with a black backpack.   Later that day, Detective Kay showed Williford a six-person photographic lineup containing appellant's picture. Williford positively identified appellant from the lineup and completed a "Statement of Confidence in Identification," in which she described some of appellant's physical characteristics and noted that he was a "regular customer" whom she "talked to . . . all the time."

Appellant was arrested on February 10. Three days later, McClease went to the police station and recanted her earlier statement. She stated that Detective Kay was "going in the wrong direction" because appellant did not commit the robbery.

On August 26, 2019, two days before trial, the Commonwealth sent appellant's counsel a witness list, which included the name "Ranuel Ramos." On the day of trial, during *voir dire*, the court advised the prospective jurors of the names of all witnesses and potential witnesses, including Ramos.

Id. at 2–3. During Lassiter's jury trial, both Amin and Williford—who were working at the Tinee Giant during the robbery—testified as eyewitnesses. Id. at 3. Amin testified that she recognized Lassiter during the robbery because he was "a regular customer . . . [and] would come in every night about the same time." Id. at 3. Video footage of the robbery was played for the jury, and Amin identified Lassiter as the robber. Id. Williford also identified Lassiter as the robber in the store video footage and identified Lassiter in store video footage from different days—January 2nd and 8th—when Lassiter was a customer in the store. Id. Both eyewitnesses were cross-examined and "confirmed unequivocally that [Lassiter] was the robber." Id.

McClease, Lassiter's girlfriend, testified on his behalf, and stated that the couple lived together about half a mile from the Tinee Giant. Id. McClease explained that the couple

3

"frequently shopped" at the Tinee Giant, and she identified Lassiter "in a still image taken from the January 2 footage." Id. However, McClease testified that on January 3, the night of the robbery, Lassiter "was home with her all night." Id. McClease also "denied ever telling Detective Kay that she believed [Lassiter] had committed the robbery." Id. On rebuttal, Detective Kay testified that on February 7, 2018, McClease informed him that she believed Lassiter committed the robbery. Id. at 4. Detective Kay acknowledged that McClease recanted her statement after Lassiter's arrest. Id.

During the trial, the Commonwealth also called Ramos to testify in rebuttal. Id. at 4. Ramos "had been incarcerated with [Lassiter] in Norfolk City Jail." Id. Lassiter "objected, asserting that the Commonwealth suppressed information about Ramos in violation of Brady v. Maryland, 373 U.S. 83 (1963)." Id. Lassiter argued:

> that he was "ambushed" because he did not know "what [Ramos was] going to say, whether or not [Ramos and appellant] were actually housed together, whether [Ramos] saw information on the news, [and] whether or not he was made some kind of an offer [for] leniency."

Id. at 4. In response, the Commonwealth prosecutor explained that:

> I have to provide exculpatory information. The Commonwealth has no exculpatory information regarding Mr. Ramos with the exception of his [criminal] record which I will provide to [counsel].
>
> I will give that to him as soon as I speak to Mr. Ramos. He does have a record. No specific offers have been made in the case. If that had been the case, I would give [appellant] a copy of a plea agreement or something like that, but I have no exculpatory information as it pertains to Mr. Ramos.

Id. Lassiter then "advised the court that at the beginning of trial, the prosecutor told him that she would not call Ramos unless [he] testified." Id. at 4. The prosecutor admitted that this was her "'plan at that point, but [she] decided we're going to call him this morning.'" Id. As summarized by the Court of Appeals:

4

The [trial] court granted appellant a brief recess to call the city jail to determine whether Ramos and appellant had been housed together. However, an employee in the jail records department responded that additional time was necessary to review the records and confirm whether the men were housed together. Appellant reiterated his objection to Ramos testifying but did not ask for a continuance. The court acknowledged appellant's "due process objection" and overruled it.

In his testimony, Ramos admitted that he had eleven prior felony convictions and two pending felony charges. Ramos testified that he shared a cell with appellant for a weekend but did not know anything about appellant or his charges beforehand. He stated that while housed together, he and appellant had a five-minute conversation about reasonable doubt, during which appellant exclaimed, "[T]here's no way they can find [me] guilty because [I] had a mask on." Ramos also stated that he had never testified for the Commonwealth previously, and although he hoped to receive "some leniency" in his upcoming cases, he had not been promised anything in exchange for testifying, such as a favorable disposition of his pending charges.

The jury subsequently found appellant guilty of robbery and wearing a mask or hood to conceal his identity.

Id. at 5. Lassiter then "moved to set aside the verdict based on insufficient evidence." Id. The court held a hearing on the motion and allowed Lassiter "to raise *pro se* the issue of his due process objection to exclude [Ramos's testimony] at trial." Id. The court denied Lassiter's motion, and observed "that even without Ramos's testimony, 'the evidence submitted by the two employees of the convenience store was pretty overwhelming . . . [and] . . . [t]he case was proven way beyond a reasonable doubt, almost beyond any doubt.'" Id.

The Court of Appeals then considered Lassiter's contention that the Circuit Court erred by allowing Ramos to testify because the Commonwealth's disclosures about Ramos were untimely under Brady. Id. The Court explained that "[w]hen a Brady claim is reviewed on appeal, the burden is on appellant to show that the trial court erred." Id. at 6 (citing Gagelonia v. Commonwealth, 52 Va. App. 99, 112 (2008)) (citation omitted).

The Court then considered whether Lassiter proved the three Brady elements to establish a due process violation: "(1) evidence favorable to the defendant existed; (2) the Commonwealth

5

suppressed that evidence by failing to timely disclose it to the defendant; and (3) the defendant was prejudiced by the nondisclosure." Id. at 7 (citing Strickler v. Greene, 527 U.S. 263, 281–82 (1999)) (citations omitted). The Court first explained that:

> The Commonwealth "ha[d] a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." Kyles v. Whitley, 514 U.S. 419, 437 (1995). The Commonwealth proffered — and Ramos confirmed at trial — that it did not offer any plea agreements to Ramos in exchange for his testimony. The Commonwealth also proffered that it was unaware of any other "exculpatory information regarding Mr. Ramos with the exception of his [criminal] record." Nothing in the record before us rebuts these proffers. Thus, appellant's speculation that he *may* have discovered additional exculpatory or impeachment material stemming from the disclosure of Ramos's anticipated testimony is insufficient to prove the favorable character of any evidence he claims had been improperly suppressed. See Jones [v. Commonwealth], 23 Va. App. [30,] [] 45-46 [2000].
>
> Accordingly, the only favorable evidence known to the Commonwealth that was subject to disclosure was Ramos's criminal record.

Id. at 9. The Commonwealth provided Lassiter with Ramos's criminal record mid-trial, but before Ramos's direct examination. Id. at 10. Thus, Lassiter "had ample opportunity to review the record and use it to impeach Ramos's credibility." Id. (citing Commonwealth v. Tuma, 285 Va. 629, 634–35). In fact, Lassiter's counsel "extensively questioned Ramos about the convictions and pending charges on his record during cross-examination and repeatedly referred to the record during his closing argument." Id. The Court of Appeals held that Lassiter failed to prove the second Brady element—that the Commonwealth suppressed Ramos's criminal record—because "evidence that is disclosed mid-trial is not 'suppressed' if a defendant has 'sufficient time to make use of [the evidence] at trial.'" Id. (quoting Tuma, 285 Va. at 635) (citation omitted). Accordingly, the Court of Appeals found that the Circuit Court "did not err by allowing Ramos to testify in the Commonwealth's rebuttal case," and affirmed the decision. Id.

**B.      State Court Habeas Petition**

While his direct appeal was pending, Lassiter filed for a writ of habeas corpus in the

Norfolk Circuit Court alleging the following grounds:[4]

> a) Ineffective assistance of counsel because trial counsel (1) failed to present expert
> testimony on eyewitness identifications, (2) failed to request jury instructions on
> identifications, (3) had a conflict of interest, (4) failed to impeach witnesses, (5)
> failed to move to dismiss for speedy trial violation, (6) failed to move to continue
> the case, (7) failed to move to suppress "4th Amendment of witness not being sure,"
> (8) failed to request cell phone tower records to support an alibi;
>
> b) His speedy trial rights were violated;
>
> c) Witness identifications of petitioner as the robber was insufficient evidence;
>
> d) There was insufficient evidence of armed robbery; [5]
>
> e) The Commonwealth failed to disclose the jailhouse informant and his criminal
> record; and
>
> f) A pre-trial identification was made under impermissibly suggestive
> circumstances and the second "witness['] first identification [was] at preliminary
> hearing over 7 months later which is akin to a show up."

Resp't Mem. Supp. Mot. Dismiss. (ECF No. 39, at 5–6); Resp't Mem. Supp. Mot. Dismiss, Ex.

12, State Habeas Petition ("State Petition") (ECF No. 39-12, at 7–8, 10–12). In the appeal, Lassiter

included the names of each attorney who represented him at his criminal trial: Chad G. Dorsk,

Daniel P. McNamara, and Trevor J. Robinson. State Petition (ECF No. 39-12, at 4). Lassiter also

included Taite A. Westendorf and Stephanie G. Johnson who represented him on appeal. Id. at 5.

On June 25, 2021, the Circuit Court denied and dismissed the petition. Resp't Mem. Supp. Mot.

---

[4] The Commonwealth provided the following list of Lassiter's grounds for relief. In preparing this Report,
the court confirmed the lists accuracy and for convenience adopts the same numbering system for the
grounds addressed in this Recommendation. See Resp't Mem. Supp. Mot. Dismiss (ECF No. 39, at 5–6).
[5] In his state petition, Lassiter states that he was convicted of armed robbery and wearing a mask. State
Petition (ECF No. 39-12, at 3). However, Lassiter was found guilty of robbery, not armed robbery, in
violation of Va. Code § 18.2-58. See Resp't Mem. Supp. Mot Dismiss, Ex. 1 Sentencing Order (ECF No.
1, at 1).

Dismiss, Ex. 15 ("State Habeas Final Order") (ECF No. 39-15).  The Supreme Court of Virginia dismissed Lassiter's appeal without prejudice for procedural errors on March 24, 2022.  Resp't Mem. Supp. Mot. Dismiss, Ex. 16 Supreme Court of Virginia Order (ECF No. 39-16).[6]  Thereafter, Lassiter failed to correct his procedural errors and perfect an appeal to the Virginia Supreme Court.

Lassiter filed a writ of actual innocence in the Court of Appeals of Virginia that was dismissed on September 30, 2021.  Resp't Mem. Supp. Mot. Dismiss (ECF No. 39, at 6).  Lassiter "filed numerous pro se motions and collateral attacks in the state circuit court, all of which . . . focused on the same argument: that the robbery statute that he was convicted under . . . [was] amended in July 2021, thus his indictment and sentencing order are void ab initio for exceeding the statutory maximum." Id. (citing Case Nos. CL22-1861; CL22-8633).  The additional filings were all denied. Id.

**C.    Federal Habeas Petition**

On July 14, 2023, and July 26, 2023, Lassiter filed two petitions for a writ of habeas corpus in this Court.   These petitions, along with several amendments and supplements, were consolidated. See (ECF No. 20).  Lassiter alleges the following twenty-two (22) grounds for federal habeas corpus relief:[7]

> Ground One: The trial court erred by allowing a jailhouse informant—Ranuel Ramos—to testify at trial because of the Commonwealth's mid-trial Brady disclosures, which violated Petitioner's due process, and the Commonwealth denied Petitioner the right to testify. (direct appeal claim).
>
> Ground Two: The trial court erred in finding the evidence sufficient to convict on

---

[6] The Supreme Court dismissed Lassiter's appeal as premature because he filed an appeal before the Circuit Court had entered judgment.  The dismissal was without prejudice, inviting correction, but Lassiter never refiled or otherwise perfected an appeal of the state habeas. See Resp't Mem. Supp. Mot. Dismiss, Ex. 16 Supreme Court of Virginia Order (ECF No. 39-16).

[7] The numbering system below was adopted from Respondent's Memorandum in Support of its' Motion to Dismiss.  Resp't Mem. Supp. Mot. Dismiss (ECF No. 39).  The Court independently confirmed Respondent's numbering system, and added Ground Eighteen, which was included in Petitioner's first Amendment to his Petition, (ECF No. 5).

identification of robbery and wearing a mask. (direct appeal claim).

Ground Three: Trial counsel provided ineffective assistance by denying Petitioner the right to testify which deprived Petitioner's autonomy right to control the case. (new claim).

Ground Four: Petitioner was incompetent to stand trial and the trial court erred by not having a competency evaluation hearing when trial counsel requested and he should have been given a psychiatrist at trial. (new claim).

Ground Five: Trial counsel was ineffective for failing to present expert testimony and failing to request eye-witness identification instructions to warn the jury the dangers of mistaken identity. (state habeas claim (a)(1) and (a)(2)).

Ground Six: The trial court erred in finding the evidence sufficient to convict petitioner of armed robbery and counsel was ineffective assistance for not assigning error on appeal. (direct appeal claim and new claim).

Grounds Seven: Trial counsel was ineffective for failing to investigate an alibi, request the cell phone records or towers, and call witnesses to support an alibi. (state habeas claim (a)(8)).

Ground Eight: Trial counsel was ineffective for failing to move to suppress 4th Amendment of witness not being sure and the trial court allowed the Commonwealth to use evidence that should have been kept out under the 4th Amendment. (state habeas claim (a)(7)).

Ground Nine: Trial counsel was ineffective for failing to move to dismiss on speedy trial grounds. (state habeas claim (a)(5)).

Ground Ten: The trial court erred in denying the motion to suppress the identification because it involved state action of the Commonwealth and trial counsel was ineffective assistance for failing to preserve the assignment of error on appeal. (defaulted on appeal; new claim).

Ground Eleven: Trial counsel was ineffective for failing to impeach the witness testimony in light of the weakness of the case. (state habeas claim (a)(4)).

Ground Twelve: Trial counsel was ineffective for not moving to dismiss case for lack of jurisdiction. (new claim).

Ground Thirteen: Trial counsel was ineffective for failing to voir dire or poll the jury to the credibility of a jailhouse informant testimony, mistaken identification of unreliable witnesses, and an inconsistent verdict with the use of the firearm dismissed to an armed robbery. (new claim).

Ground Fourteen: Trial counsel was ineffective for failing to challenge the grand jury procedure and move to dismiss on constitutional objections or lack of a legal qualification of an individual juror and for lack of jurisdiction. (new claim).

Ground Fifteen: Trial counsel was ineffective assistance for failing to request a lesser-included offense instruction to the armed robbery. (new claim).

Ground Sixteen: The Department of Corrections violated Petitioner's due process rights and Eighth Amendment rights by not recalculating his good time, security level and classification score and putting petitioner in for an institutional transfer. (new claim).

Ground Seventeen: Trial counsel was ineffective for failing to file a motion to vacate sentence. (new claim).

Ground Eighteen: Trial court erred in denying the motion to vacate the sentence as void ab initio because it should have been applied retroactively. (ECF No. 5, at 2) (ECF No. 11, at 2–4).[8]

Ground Nineteen: Trial counsel was ineffective for failing to object to the Commonwealth's prosecutorial misconduct and for failing to object to the sentencing recommendation and order. (new claim).

Ground Twenty: The Commonwealth and trial counsel committed fraud upon the court when they denied me the right to testify violating my autonomy right to control the case which is also prosecutorial misconduct. (new claim and duplicative of Ground Three).

Ground Twenty-One: The habeas court erred by dismissing the petition for a writ of habeas corpus without ordering an evidentiary hearing on the allegations of ineffective assistance of counsel. (new claim) (ECF No. 29, at 5–8).

Ground Twenty-Two: Trial counsel was ineffective for not moving to continue case when he objected that petitioner's due process right to a fair trial would be violated if the jailhouse informant Ranuel Ramos was allowed to testify. (state habeas claim (a)(6))).

---

[8] Respondent was unable to locate Ground Eighteen in Petitioner's pleadings. Resp't Mem. Supp. Mot. Dismiss (ECF No. 39, at 8). Accordingly, this Ground is not addressed in their Motion to Dismiss. But Ground Seventeen, which was considered by Respondent, and Ground 18 have significant overlap. For the same reasons Ground 17 is procedurally defaulted, as described below, Ground 18 is also procedurally defaulted.

Petition (ECF No. 1, at 25–48) (including Grounds 1–17) (cleaned up); (ECF No. 5) (including

Ground 18); Amendment to Petition (ECF No. 23); Amendment to Petition (ECF No. 29)

(including Ground 21); Amendment to Petition (ECF No. 46); Resp't Mem. Supp. Mot. Dismiss

(ECF No. 39, at 6–8).

Respondent filed a Rule 5 Answer and Motion to Dismiss, along with a brief in support,

arguing that all of Lassiter's claims should be dismissed. Resp't Mem. Supp. Mot. Dismiss (ECF

No. 39). Respondent divided Lassiter's grounds for relief into three categories, which the court

will address below:

> 1. Grounds 3, 4, partial 6, 10, 12, 13, 14, 15, 17,[9] 19, 20, and 21—not raised on
> direct appeal or court habeas proceedings, and should be deemed exhausted and
> simultaneously defaulted. To the extent relevant, there are no substantial
> ineffectiveness claims under <u>Martinez</u>.
>
> 2. Grounds 5, 7, 8, 9, 11, and 22—raised in lower state court habeas but not properly
> appealed to the highest state court, and thus are exhausted and defaulted. To the
> extent relevant, there are no substantial ineffectiveness claims under <u>Martinez</u>.
>
> 3. Grounds 1, 2, and partial 6—properly exhausted, and the state court decision was
> not based on an unreasonable application of federal law or unreasonable finding of
> fact.

<u>See</u> <u>id.</u> at 9. Petitioner subsequently amended his Petition, (ECF No. 46), and the court will

consider those amendments in making its recommendation below. Petitioner opposed the

Respondent's Motion to Dismiss, (ECF No. 47), and filed a Motion to Appoint Counsel, (ECF No.

45), Motion for Contempt of Order, (ECF No. 50), Motion for Default Judgment, (ECF No. 53),

Motion for Bail (ECF No. 54), and Motion for Summary Judgment (ECF No. 55). This Report

addresses all outstanding motions.[10]

---

[9] The court will consider Ground Eighteen with Ground Seventeen. Lassiter alleges that he "filed a collateral
attack" raising Ground Eighteen. (ECF No. 5, at 2). However, the court reviewed Lassiter's collateral
findings and did not locate the argument raised in Ground Eighteen.

[10] A prior Order, entered December 18, 2023, resolved 18 other motions Lassiter filed earlier in the
proceedings. Order (ECF No. 51).

### III.   STANDARD OF REVIEW

A motion to dismiss "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted) (discussing Fed. R. Civ. P. 12(b)(6)); see also Goard v. Crown Auto, Inc., 170 F. Supp. 3d 915, 917 (W.D. Va. 2016) (noting that a "motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim"). A complaint is subject to dismissal if it does not "contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (cleaned up)). Factual allegations cannot require speculation or merely be conceivable. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555. This inquiry is "context-specific." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009).

In considering a motion to dismiss, the "court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E. I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (citing Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)). The court "may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., 684 F.3d 462, 467 (4th Cir. 2012) (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009))

### IV.   ANALYSIS

The court will address each of Lassiter's grounds for relief in turn, beginning with Lassiter's unexhausted claims.

**A.      Lassiter has not properly exhausted Nineteen (19) of his Twenty-two (22) claims.**

Habeas petitions filed pursuant to 28 U.S.C. § 2254 challenge a state's custody over a petitioner on the grounds that such custody violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a ). Before applying for federal habeas relief, however, a petitioner must first exhaust the remedies available in state court or demonstrate the absence or ineffectiveness of such remedies. 28 U.S.C. § 2254(b)(1). Therefore, before a state prisoner can apply for federal habeas relief, he must first give the state court an opportunity to consider alleged constitutional errors occurring in the state proceeding. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997).

**B.      Claims raised for the first time in Lassiter's Federal Petition are simultaneously exhausted and defaulted, and barred from federal review.**

In total, Lassiter raises twenty-two (22) grounds for relief in his federal habeas petition. Grounds 3, 4, partial 6, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 21 were raised for the first time in Lassiter's federal petition. These fourteen (14) new grounds for relief include nine (9) new allegations of ineffective assistance of counsel (Grounds 3, partial 6, 10, 12, 13, 14, 15, 17, 19); several additional trial court errors (Grounds 4, 6 partial, 10, and 18), including arguments that Petitioner was incompetent to stand trial and should have been given a psychiatrist at trial (Ground 4); violations of Petitioner's due process and Eight Amendment Rights (Ground 16); claims of fraud upon the court by trial counsel and the Commonwealth (Ground 20); and alleged procedural error in dismissing the state habeas petition without ordering an evidentiary hearing (Ground 21).

In order to satisfy exhaustion, the petitioner "must have presented to the state court 'both the operative facts and the controlling legal principles'" of each of these claims. Kasi v. Angelone, 300 F.3d 487, 501–02 (4th Cir. 2002) (quoting Matthews v. Evat, 105 F.3d 907, 911 (4th Cir.

1997).   When a claim has not been presented to state court, it may nevertheless be treated as exhausted "if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) see Gray v. Netherland, 518 U.S. 152, 161, 116 S. Ct. 2074, 135 L. Ed. 2d 457 (1986); Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990).   Virginia law prohibits successive habeas petitions alleging grounds that were available to the petitioner at the time of his initial filing.   Va. Code § 8.01-654(B)(2) ("No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition.").

Petitioner's new grounds for relief—except for Ground 21, which is considered separately below—were available to him when he filed his state habeas corpus petition, and thus would be procedurally barred under Virginia's rule against successive habeas petitions.[11]   For instance, Grounds 3,[12] partial 10, 12, 13, 14, 15, 17, and 19 raise claims of ineffective assistance of trial counsel and were clearly available to Lassiter when he filed his state habeas petition.   Likewise, Petitioner's claims related to the court's conduct during trial—Grounds 4, 6, partial 10, and 18—were available to Lassiter when he filed his state petition.   Finally, Ground 20—that the Commonwealth and trial counsel committed fraud upon the court, and the Commonwealth engaged in prosecutorial misconduct—also relates to alleged conduct that occurred during Petitioner's trial and is thus procedurally barred.

---

[11] By final order of the Circuit Court for the City of Norfolk, on March 26, 2020, Lassiter was convicted of robbery and wearing a mask to conceal his identity.  Lassiter filed his state habeas petition over one year later, on April 8, 2021.  Resp't Br. Supp. Mot. Dismiss, Ex. 12 (ECF No. 39-12, at 1).  Thus, any alleged errors that occurred during the trial, including claims of ineffective assistance of counsel, were available to Lassiter when he filed his state habeas petition.

[12] In Lassiter's state habeas petition, he alleged ineffective assistance of counsel because of a "conflict in interest."  Resp't Br. Supp. Mot. Dismiss, Ex. 12 (ECF No. 39-12, at 7).  However, Lassiter did not provide any explanation aside from this conclusory allegation, and thus the court is unable to conclude that Ground 3 was raised in the state petition.

Failure to comply with state procedures in raising a claim bars a petitioner from raising the claim in a federal habeas petition unless petitioner can show cause for the default and resulting prejudice. Bassette, 915 F.2d at 937 (citing Wainwright v. Sykes, 433 U.S. 72 (1977)). Lassiter has not shown any factors which could meet the cause and prejudice standard necessary to overcome procedural default with respect to any of the newly asserted claims. He has alleged no "objective factor external to the defense" which impeded his efforts to comply with the state procedural rule. Wolfe v. Johnson, 565 F.3d 140, n.27 (4th Cir. 2009) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). Additionally, the court's review of the record confirms that failing to review his claims will not result in a fundamental miscarriage of justice. Lassiter's' Petition presents no "new reliable evidence" supporting a claim of actual innocence. Sharpe v. Bell, 593 F.3d 372, 377 (4th Cir. 2010). Because Lassiter has not shown cause excusing his failure to comply with state procedure or a fundamental miscarriage of justice, his fourteen (14) new claims set forth for the first time in this federal petition are procedurally defaulted and barred from federal review.

### 1. Lassiter's New Claims for Ineffective Assistance of Counsel are not substantial claims under Martinez.

Lassiter raised many challenges to his state custody on the grounds that he did not receive effective trial representation as required under the Sixth Amendment. Petition (ECF No. 1). However, as explained above, Lassiter is procedurally barred from raising those claims now. Furthermore, the Supreme Court's holding in Martinez v. Ryan, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), does not permit review of his ineffective assistance of counsel claims raised for the first time in his federal habeas petition, because none meet the requirement that they be substantial claims with "some merit." Id. at 14.

15

With respect to claims of ineffective assistance of counsel, Martinez may excuse a procedural default if it results from inadequate representation during the initial collateral review proceedings.  There, the Supreme Court recognized that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  Martinez, 566 U.S. at 9.  Specifically, Martinez established a test to determine whether a petitioner can show cause for defaulting on an ineffective assistance claim because of inadequate representation in state habeas proceedings.

The Martinez test applies when the state imposing the conviction requires the prisoner to raise an ineffective assistance claim in an initial collateral proceeding rather than on direct review. Id. at 14.  Virginia is such a state.  See, e.g., Lenz v. Commonwealth, 261 Va. 451, 544 S.E.2d 299, 304 (Va. 2001) (explaining that Virginia requires ineffective assistance claims to be brought "in a habeas corpus proceeding and are not cognizable on direct appeal").  Under the test, the state must first have failed to appoint counsel in the initial-review collateral proceeding, or appointed counsel in the collateral proceeding must have been ineffective under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  See Martinez, 566 U.S. at 14.  Lassiter was not appointed counsel in his collateral proceeding, and thus this prong is met.  Second, the underlying ineffective assistance claim must be "a substantial one which is to say that the prisoner must demonstrate that the claim has some merit."  Id.

For Lassiter to plausibly allege a meritorious claim of ineffective assistance of counsel, he must plausibly allege facts sufficient to satisfy both the "performance" and "prejudice" prongs of the two-part test set forth in Strickland.  See Moore v. Stirling, 952 F.3d 174, 185-86 (4th Cir.), cert. denied, 141 S. Ct. 680, 208 L. Ed. 2d 285 (2020).  To satisfy the "performance" prong of the test, Lassiter must show that "counsel's representation fell below an objective standard of

16

reasonableness" such that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687–88.  To satisfy the "prejudice" prong of the test, Lassiter must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  To satisfy Martinez and obtain federal review of the ineffectiveness claims raised for the first time in this federal habeas action, Lassiter must plausibly allege that either his trial or appellate counsel were constitutionally ineffective as to both performance and prejudice. Moore, 952 F.3d at 185-86.  As explained below, Lassiter fails to satisfy either the performance or prejudice prongs of Strickland in Grounds 3, partial 10, 12, 13, 14, 15, 17, and 19, and thus Martinez does not excuse the procedural default of these grounds for relief.   Where the performance prong is plainly not satisfied, the court does not need to consider prejudice under Strickland.  See Spencer v. Murray, 18 F. 3d 229, 232–33 (4th Cir. 1994) (explaining that the "performance and prejudice" prongs are "separate and distinct elements of an ineffective assistance claim," and both must be satisfied to prevail on the merits.).

### a.      Performance

In Grounds 3, 6, partial 10, 12, 13, 14, 15, 17, and 19, Lassiter fails to demonstrate that counsel's performance fell below "an objective standard or reasonableness." Strickland, 466 U.S. 688.  The difficult burden is on Petitioner to show that counsel's performance was deficient because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.  In fact, there is "a heavy measure of deference to counsel's judgment." Id. at 691; see also Pruett, 996 F.2d at 1568 (finding that counsel is "entitled to a presumption that he decided which issues were most likely to afford relief.").  Attorneys are not required to "raise every possible claim," and

"[t]hey are permitted to set priorities, determine trial strategy, and press those clams with the greatest chance of success." <u>United States v. Mason</u>, 774 F.3d 824, 828 (4th Cir. 2014). Under this deferential standard, Lassiter has failed to show that trial counsel's performance was less than that constitutionally required.

i.      **Counsel's Performance Alleged in Ground 3**

In Ground 3, Lassiter alleges that trial counsel was ineffective for denying him the right to testify, which deprived him of his autonomy right to control the case. Petition (ECF No. 1, at 8). Lassiter contends that he "insisted" on testifying, and this:

> created a conflict of interest of [him] wanting to testify and being caught in the middle of [trial counsel] and the Commonwealth Agreement which [he] had no part[] of and it was [his] prerogative not [trial counsel's] to decide on the objective of [his] defense to testify and assert [his] innocence and be the master of [his] defense.

<u>Id.</u> Lassiter alleges that his trial counsel, Mr. Dorsk, failed to act "within the range of competence demanded . . . and [he] clearly has not received reasonably effective assistance of counsel." <u>Id.</u> at 25. Further, Lassiter argues that because trial counsel failed to defer to "his autonomy right to testify and assert his innocence[,] such circumstances constitute structural error not subject to [the] harmless error analysis[.] <u>Id.</u> Lassiter alleges that because his autonomy is at issue, and not counsel's competence, <u>Strickland's</u> "2 part ineffective assistance of counsel jurisprudence does not apply." <u>Id.</u> Instead, Lassiter contends he is entitled to an evidentiary hearing because "trial counsel abandoned [their] defense strategy because of [a] conflict of interest." <u>Id.</u> (citing <u>Ciak v. United States</u>, 59 F.3d 296 (2d Cir. 1995)).

First, Lassiter has not alleged conflict of interest. A conflict of interest is "a conflict that affected counsel's performance-as opposed to a mere theoretical division of loyalties"). <u>Simpson v. Clarke</u>, 2023 WL 5509351, 2023 U.S. Dist. LEXIS 150351, at *38 (E.D. Va. Aug 24, 2024)

(quoting Spence v. Commonwealth, 60 Va. App. 355, 370, 727 S.E.2d 786, 793 (2012)) (internal emphasis and quotation omitted).   A defendant's Sixth Amendment rights are violated by "an actual conflict of interest [that] adversely affected his lawyer's performance."  Cuyler v. Sullivan, 446 U.S. 335, 350 (1980).   Here, Lassiter's claim is conclusory, and he offers no evidence to support an actual conflict of interest.

Second, assuming Lassiter has properly alleged a conflict of interest—which he has not— his reliance on Ciak is incorrect.  In Ciak, the Second Circuit granted the Petitioner's habeas corpus petition and vacated his conviction, holding that defense counsel's "actual and possible conflicts of interest require[d] automatic reversal of petitioner's conviction because the trial court failed to conduct any inquiry."   59 F.3d at 307 ("It was therefore incumbent upon the district court reviewing petitioner's § 2255 motion to hold an evidentiary hearing to determine the position taken by [counsel] in the forfeiture litigation," but because counsel's "actual and possible conflicts of interest require automatic reversal . . . a remand for an evidentiary hearing is unnecessary.").   The Fourth Circuit explicitly disagreed with Ciak and rejected the automatic reversal rule.  Mickens v. U.S., 240 F.3d 348, at n.6 (4th Cir. 2001).   The U.S. Supreme Court affirmed the Fourth Circuit's decision in Mickens, and explained that a conflict of interest, for Sixth Amendment purposes, is "a conflict *that affected counsel's performance*."  Mickens v. Taylor, 535 U.S. 162, 171 (2002) (emphasis in original).   Thus, a criminal defendant is not entitled to automatic reversal of a conviction where the trial judge failed to inquire into an alleged conflict absent "proof of effect upon representation."  Id. at 173.   Here, Lassiter provides no evidence of any actual conflict, nor any evidence that the alleged conflict affected his counsel's representation.   He has also proffered no facts to support any suggestion that testifying would have helped his defense.

19

Because Lassiter fails to allege a conflict of interest, he must satisfy both prongs of Strickland v. Washington to demonstrate ineffective assistance of counsel. See Petition (ECF No. 1, at 25). Considering Ground 3, Petitioner fails to demonstrate that his trial counsel prevented him from testifying, or that his testimony would have helped his defense. Lassiter was informed by the presiding trial judge of his right to testify:

> Q: And you understand at some point during this trial it will be your opportunity to make a decision as to whether you will testify or not testify. You have the right to do both of those things.
> I am not asking you to tell me what decision you've made, but I want to make sure that you and your lawyer have discussed that decision and when the time comes you will be ready to make that decision:
>
> A [Lassiter]: Yes.

Randy Lee Lassiter, Jr. No. 1490582 v. Harold W. Clarke, Transcript of Trial Proceedings, Vol. 1, at 12:5–9 (Aug. 28, 2019). Lassiter had a constitutional right to testify truthfully on his own behalf. Rock v. Arkansas, 483 U.S. 44 (U.S. 1987). But where an ineffectiveness claim is based on counsel's alleged decision not to call the Defendant, it must still meet Strickland's prejudice prong. United States v. Adams, 1999 WL 812352, 1999 U.S. App. LEXIS 25489, at *2–3 (Oct. 12, 1999 4th Cir.) (affirming district court dismissal of ineffectiveness claim when a Defendant alleged no specific prejudice from counsel's alleged denial of right to testify). Here, Lassiter alleges no specific prejudice from his failure to testify. Further, as noted by the Commonwealth, Lassiter also alleges in Ground 4 that trial counsel erred in not evaluating his competency and he was unable "to assist his counsel in his defense." (ECF No. 1, at 26).

Lassiter is also not entitled to an evidentiary hearing on Ground 3. Federal habeas petitioners are not automatically entitled to an evidentiary hearing. Instead, § 2254 provides that:

> [i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense,

28 U.S.C. § 2254(e).  Lassiter has not alleged or argued any basis to warrant an evidentiary hearing under the § 2254 standard.

### ii.    Counsel's Performance Alleged in Part of Ground 6

Ground 6 alleges that the trial court erred in finding the evidence sufficient to convict Lassiter of armed robbery, and trial counsel was ineffective for not assigning error on appeal. Petition (ECF No. 1, at 28).  Lassiter admits that Ground 6 "is in procedural default," but believes it "is excused for actual innocence" because he was convicted without proof of the elements of the crime charged beyond a reasonable doubt.   Id.   Specifically, Lassiter argues that the Commonwealth failed to prove possession of a firearm, or alternatively, violence or intimidation. Id. Lassiter contends that trial counsel—Mr. Dorsk—was ineffective because he did not raise this argument to the trial court, and Lassiter instead filed a "pro-se . . . motion to set aside the verdict." Id. Petitioner also alleges that appellate counsel, Mr. Westendorf provided ineffective assistance "for not making this preserved argument an assignment of error on appeal exhausting [his] state remedies." Id.

Lassiter was convicted of robbery, not armed robbery.  Nonetheless, during Lassiter's trial, Mrs. Amin testified that she saw the "the defendant [come] to the door.  And when he came to the door [she] saw the revolver in his hand." Randy Lee Lassiter, Jr. No. 1490582 v. Harold W.

Clarke, Transcript of Trial Proceedings, Vol. 1, at 79:14–17. (Aug. 28, 2019). Mrs. Amin testified

that "[t]he gun he had was a revolver silver in color. The barrel [was] about the size of my pinkie

finger, no bigger than my ring finger." Id. at 80:7–9. On cross examination, defense counsel asked

Mrs. Amin if she was "focused on the . . . revolver," and she replied that she was "making sure

that he wasn't going to point it at [her]." Id. at 99:6–8. Mrs. Williford also testified that she told

the defendant to "[t]ake that hoodie off, but then he raised up a gun." Id. 109:5–8. She explained

that "it was a hand silver gun," and he pointed it at her. Id. at 109:15. She testified that she went

behind the counter at the store because the Defendant "had the gun and ordered [her] to go back

there." Id. at 119:20–23. The state appellate court, when summarizing the facts presented at the

Norfolk Circuit Court, explicitly stated that Lassiter had a gun, and used during the commission

of the robbery:

> At approximately 11:25 p.m., appellant entered the store wearing a black hoodie
> with the hood up and a mask or scarf over the bottom half of his case. He was
> carrying a silver handgun and a black duffel bag.
>
> [Lassiter] pointed the gun at Williford and ordered the women to go behind the
> counter. He told Williford to 'give him all the money now.' Williford opened the
> cash register, and [Lassiter] reached over the counter, took cash from the register
> drawer, and stuffed it into his duffel bag. He demanded more money, telling the
> women that 'wasn't all [of] the case.' Williford retrieved a concealed cash register
> drawer and placed it on the counter. [Lassiter] removed the money from that drawer
> and demanded cigarettes and cigars. After Williford and Amin put cigarettes and
> cigars into [Lassiter's] duffel bag, he left the store.

Resp't Mem. Supp. Mot. Dismiss, Ex. 2 Court of Appeals of Virginia Opinion (ECF No. 39-2, at

2). Evidence that Lassiter possessed a weapon was clearly presented at trial. It is not error to fail

to advance arguments that counsel believes are futile or frivolous. Moody v. Polk, 408 F.3d 141,

151 (4th Cir. 1005). Thus, neither Mr. Dorsk nor Mr. Westendorf failed to effectively represent

Lassiter as alleged in Ground 6. Accordingly, Ground 6 fails to establish either prong of

Strickland, and is procedurally defaulted.

### iii.       Counsel's Performance Alleged in Ground 10

In Ground 10, Lassiter alleges that "[t]he trial court erred in denying the Motion to Suppress the Identification because it involved State Action of the Commonwealth and trial counsel was ineffective . . . for failure to preserve the assignment of error for appeal. Petition (ECF No. 1, at 34). Petitioner again argues that Ground 10 "is in procedural default but is excused for actual innocence because the identification was the result of a display so unnecessarily suggesting and conductive to irreparable mistake . . . [and] petitioner was denied due process." Id. at 34. He alleged that one of his trial lawyers, Mr. McNamara, was ineffective for failing to properly preserve this error for appeal. Id.

As previously mentioned, actual innocence does not excuse Lassiter's default because he has failed to provide any new evidence of his alleged innocence. The majority of Petitioner's new allegations regarding the identification were procedurally defaulted on appeal for counsel's failure to raise them at trial. But, the appellate court noted that:

> At the motion to suppress hearing, appellant's counsel presented arguments about the photograph lineup that law enforcement showed only to Williford, the other eyewitness, but did not show to Amin. He also asserted that appellant's appearance at the preliminary hearing, where both Amin and Williford identified him as the robber, was "essentially akin to a show-up at this point" because appellant was seated next to his lawyer and was wearing jailhouse clothing.

> At the motion to suppress hearing, the trial court ruled:

>> [T]he issue that defense counsel is relying on is that based upon the adamant descriptions of both victims in the case and that they both confirmed that the robber, alleged robber, was a regular customer of that store[.] [T]hat based on that, the detectives went back, according to the victim[s'] testimony, and obtained a photograph of a person that matched the description, except for the acne on the eyes, from the day before, and from that description and that photograph from the day before, they elicited -- they already had a file photograph of him that they compiled with others and used that to conduct the photo lineup, and counsel is arguing that that is inappropriate

> I do not find from the evidence that was presented to me by each of the witnesses today or from that lineup that there was any undue influence in that procedure or the police officers' investigation.

Resp't Mem. Supp. Mot. to Dismiss (ECF No. 39, at 16–17) (quoting (ECF No. 39-3, at 7–8)).

Lassiter has failed to proffer any additional argument that counsel should have raised regarding the identification and/or state action that would have been successful at trial or on appeal. The mere fact that an argument was unsuccessful at trial does not render counsel's performance constitutionally deficient. See United States v. Eddington, 2021 WL 2046107, 2012 U.S. Dist. LEXIS 78181, at *2 (D.S.C. June 5. 2012) (citing Strickland, 466 U.S. at 689 (4th Cir. 1984)).

### iv.    Counsel's Performance Alleged in Ground 12

In Ground 12, Lassiter argues that trial counsel was ineffective for not moving to dismiss his case for lack of jurisdiction. Petition (ECF No. 1, at 40). Lassiter alleges that because Mr. Dorsk refused to file a motion to dismiss for lack of jurisdiction, "[t]here was a conflict of interest," between his wishes and Mr. Dorsk's private interests. Id. As in Ground 3, Lassiter has failed to demonstrate a conflict of interest as opposed to a disagreement about tactics. Regarding counsel's performance, Lassiter fails to meaningfully challenge jurisdiction or proffer any jurisdictional argument that counsel should have made at trial. Thus, Lassiter has not plausibly alleged facts to meet the performance prong of Strickland.

### v.    Counsel's Performance Alleged in Ground 13

In Ground 13, petitioner alleges that "[t]rial counsel was ineffective for failure to voir dire or poll the jury to the credibility of a jailhouse informa[nt] testimony, mistaken identification of unreliable witnesses, and a[n] inconsistent verdict with the use of the firearm dismissed to an armed robbery." Regarding this claim, the court finds no deficiency in counsel's performance because jurors cannot be questioned regarding their weighing of the evidence or the verdict. Robinson v.

24

Polk, 438 F.3d 350, 365 (4th Cir. 2006) ("The firmly established *general rule* is that juror testimony *may not* be used to impeach a jury verdict.") (quotation and citations omitted).  The only exception to this rule arises where an "external influence affected their [the jury's] ability to impartially consider the evidence." United States v. Johnson, 954 F.3d 174, 176 (4th Cir. 2020). An influence is external if it is (1) "extraneous prejudicial information; i.e. information that was not admitted into evidence but nevertheless bears on a fact at issue in the case," or (2) "an outside influence upon the partiality of the jury, such as private communication, contact, or tampering . . . with a juror." Barnes v. Joyner, 751 F. 229, 245 (4th Cir. 2014).  Here, Lassiter does not allege facts to overcome the general rule.

Lassiter also alleges that trial counsel was ineffective for failure to voir dire the jury about a newspaper article, and defendants are entitled to an impartial jury.  However, Lassiter fails to allege how this additional voir dire question could have impacted the outcome of his case.  There is also no evidence that the jury was partial.  Thus, the performance prong of Strickland is not satisfied, and Ground 13 is not eligible for federal review under Martinez.

### vi.   Counsel's Performance Alleged in Ground 14

In Ground 14, Petitioner alleges that trial counsel was ineffective for failing "to challenge the grand jury procedure and move to dismiss on constitutional objection or lack of a[] legal qualification of an individual juror and for lack of jurisdiction." (ECF No. 1, at 42).  Here, Lassiter alleges he "was not present at the Grand Jury proceeding and there is no evidence as required by law to prove that on August 1, 2018 the Grand Jury returned indictments against petition in open court and [there is] no record of the proceedings." Id.  Petitioner asserts he was unable to object to the closed proceeding, and alleges the indictment violated his due process rights.  In support of this argument, Lassiter cites the Confrontation Clause, and alleges that he had a right to be in the

courtroom at every stage of his trial and to present exculpatory evidence. Lassiter also alleges he was entitled to cross-examine the grand jurors. According to Lassiter, "trial counsel was ineffective … for failure to present exculpatory evidence, object to evidence admitted by the Commonwealth, failure to cross-examine the Grand Juror's, and failure to move to dismiss Grand Jury Indictment." Id. Lassiter contends there was a "conflict of interest because trial counsel [would not] file [his] motion to dismiss on the Grand Jury Procedure." Id.

A defendant has no right to be present during grand jury deliberations and has no right to present evidence to a grand jury. See Duke v. United States, 90 F.2d 840, 841 (4th Cir. 1937) ("There is no right on the part of one whose conduct is being investigated by a grand jury to petition the grand jury or to appear before it, which is guaranteed by the Constitution or otherwise; and it is important that the processes of criminal justice be not thus interfered with by those who have reason to think that their conduct is under investigation."); United States v. Johnson, 553 F.Supp. 2d 582, 616 (E.D. Va, 2008) ([T]he law does not require a prosecutor to present exculpatory evidence to a grand jury . . . Nor does the target of a grand jury investigation have a constitutional right to testify before the grand jury."). Accordingly, it was not constitutionally deficient for trial counsel to fail to advance this meritless argument. See Sharpe, 593 F.3d at 383 (finding that counsel did not provide deficient representation by failing to raise issues that are futile).

### vii.    Counsel's Performance Alleged in Ground 15

In Ground 15, Lassiter alleges that trial counsel was ineffective for failing to request a lesser-included offense instruction to armed robbery. However, because Petitioner was convicted of robbery, and fails to show how an instruction of a lesser-included offense would have been helpful, he has failed to satisfy the performance prong of Strickland. Counsel made the tactical decision to argue that defendant was not guilty of armed robbery, rather than request an instruction

26

for a lesser-included offense that may have been more difficult to refute.  Lassiter has not demonstrated that his attorney's decision was unreasonable, and consequently Ground 15 fails under Strickland.  See Strickland, 466 U.S. at 689 (explaining that because "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence," and because there is a wide range of defense strategies," scrutiny of counsel's performance must be highly deferential.").

### viii.   Counsel's Performance Alleged in Ground 17 and Ground 18

In Ground 17, Petitioner argues that trial counsel was ineffective for failing to file a motion to vacate the sentence.  Petition (ECF No. 1, at 47).  Petitioner has alleged in multiple pleadings in the state circuit court that the Virginia robbery statute has been amended since his conviction, and "due process requires a state to apply a new interpretation to a state criminal statute retroactively to cases on collateral review." Id. (citing Fiore v. White, 531 U.S. 225 (2001)).  Also, in his first Amendment to his Petition, (ECF No. 5), Lassiter added Ground 18 which alleges that the "[t]rial court erred in denying the Motion to Vacate the Sentence as void ab initio because it should have been applied retroactively."  (ECF No. 5, at 2).

Va. Code § 18.2-58 was amended after Lassiter's convictions to include multiple ranges of punishment for the crime of robbery, effective July 2021:

> B.    Any person who commits robbery is guilty of a felony and shall be punished as follows:
>
> 1.    Any person who commits robbery and causes serious bodily injury to or the death of any other person is guilty of a Class 2 felony.
>
> 2.    Any person who commits robbery by using or displaying a firearm, as defined in §  18.2-308.2:2, in a threatening manner is guilty of a Class 3 felony.
>
> 3.    Any person who commits robbery by using physical force not resulting in serious bodily injury or by using or displaying a deadly

weapon other than a firearm in a threatening manner is guilty of a Class 5 felony.

4.    Any person who commits robbery by using threat or intimidation or any other means not involving a deadly weapon is guilty of a Class 6 felony.

Lassiter's argument that his judgment is void based on this new statutory scheme fails for two reasons. First, the amended sentencing ranges are not retroactive to Lassiter's case, but instead only apply to offenses committed after July 2021. See Ruplenas v. Commonwealth, 221 Va. 927, 978, 275 S.E.2d 628, 632 (1981). Lassiter's offenses occurred in 2018. Second, assuming the amended sentencing ranges are retroactive to Lassiter's case, Lassiter has failed to show how his sentence of ten years is above the new maximum penalty. If Lassiter was convicted today under the new statutory scheme, he would be convicted of a Class 3 felony—at trial, he was found to have used a firearm in the commission of the offense. A Class 3 felony is punishable by up to twenty years of incarceration. See Va. Code § 18.2-68. Lassiter was sentenced to ten years, and thus his conviction is below the amended statutory maximum. See Resp't Mem. Supp. Mot. to Dismiss (ECF No. 37, at 20–21). Because the statute does not apply retroactively to Lassiter, and even if it was it would not change the outcome of his conviction and sentence, Lassiter's counsel was not ineffective for refusing to raise Petitioner's retroactivity theory.

**2.    Ground 21**

In Ground 21, Lassiter alleges that the habeas court erred by dismissing his petition without ordering an evidentiary hearing on the allegations of ineffective assistance of counsel. (ECF No. 29, at 5–8). In Yeatts v. Murray, 249 Va. 285, 290–91 (Va. 1995), the Supreme Court of Virginia held that the appellant's assignment of error in Ground 21, which claimed that the habeas court erred in dismissing the petition "without ordering an evidentiary hearing as to his allegations of ineffective assistance of counsel," alleges only procedural error by the habeas court, not a

28

challenge to the substantive ruling on the merits. See Koper v. Angelone, 961 F. Supp. 916, 919 (W.D. Va. 1997). Thus, the assignment of error raised in Yeatts, and in Ground 21, are not grounds for habeas relief. See 249 Va at 291. Likewise, Lassiter challenges an alleged procedural error in his state habeas proceedings, which is not cognizable in a federal habeas claim. Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) ("[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief."); see also Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008) ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself.").

**C.    Lassiter did not properly exhaust Grounds 5, 7, 8, 9, 11, and 22, nor establish a basis for federal review of these defaulted claims.**

Grounds 5, 7, 8, 9, 11, and 22 were raised in Lassiter's state habeas claim, but were not properly appealed to the highest state court. Because some of these involved claims that could only be raised on collateral review, this Report considers whether there are any substantial claims under Martinez, concluding there are not.

### i.    Ground 5

In Ground 5, Lassiter alleges that trial counsel was ineffective for failing to present expert testimony and failing to request eye-witness identification instructions to warn the jury the dangers of mistaken identity. The state habeas court dismissed this claim, finding it failed both prongs of Strickland, "given the substantial discretion trial courts have regarding the introduction of expert testimony on the reliability of identifications as well as jury instructions on that subject." State Habeas Final Order, at 3 (ECF No. 39-15). The court found Lassiter's claim was "too conclusory and [was] unaccompanied by specific factual allegations and thus are factually deficient." Id. at 2

(citing Penn v. Smyth, 188 Va. 367, 49 S.E.2d 600 (1948)). Further, Lassiter's claim did not state "a cause of action under the prejudice prong of *Strickland*, inasmuch as petitioner neither proffers nor demonstrates a reasonable probability of a different result at trial, but for any of trial counsel's alleged errors." Id. The court explained that the "jury instructions here were sufficient for the jury to consider the reliability of the identification testimony of the two robbery victims," "defense counsel did move to dismiss the charges based on a claimed violation of petitioner's speedy trial rights," and given the overwhelming proof of petitioner's guilt . . . petitioner was not prejudiced within the meaning of Strickland. Based on a review of the record the state court's decision regarding Ground 5 is not contrary to federal law, or factually suspect. Also, "[i]n Virginia, there is no model jury instruction addressing eyewitness identification and this Court [the Supreme Court of Virginia] has not mandated a cautionary instruction on eyewitness identification be given in every case in which a defendant disputes his or her identification by an eyewitness." Jennings v. Booker, Civil Action No. 3:18-cv-553, 2019 WL 4724329, 2019 U.S. Dist. LEXIS 167424, at *26 (E.D. Va. Aug 29, 2019) (quoting the Supreme Court of Virginia's opinion and finding "no unreasonable application of the law") (internal quotation omitted). Accordingly, Lassiter has not plausibly alleged a substantial claim of ineffectiveness on this Ground

### ii.    Ground 7

In Ground 7, Petitioner alleges trial counsel was ineffective for failing to investigate an alibi, request the cell phone records or towers, and failing to call witnesses to support an alibi. The state habeas court dismissed this argument, finding it failed both prongs of Strickland. The court noted that Petitioner neither proffered nor demonstrated a reasonable probability of a different outcome at trial, but for trial counsel's alleged errors. State Habeas Final Order (ECF No. 39-15, at 1). In fact, Lassiter failed to provide any proffer of a valid alibi, cell phone record, or affidavits

from alleged witnesses. "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply Strickland's standards' because 'it is very different to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudice by any deficiencies in counsel's performance.'" Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting United States ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir. 1991). Thus, the state court decision was neither factually nor legally unreasonable, and I recommend dismissing Ground 7 for failing to plausibly allege a substantial claim of ineffectiveness.

### iii.    Ground 8

In Ground 8, Petitioner alleges that trial counsel was ineffective for failing to move suppress the witness not being sure about his identification and the trial court allowed the Commonwealth to use evidence that should have been kept out under the 4th Amendment. The state habeas court dismissed this claim, finding it failed to meet either prong of Strickland. Also, during a hearing on Lassiter's motion to set aside the verdict, the Court of Appeals:

> allowed appellant to raise *pro se* the issue of his "due process objection to exclude [Ramos's testimony] at trial." The court denied the motion and noted that even without Ramos's testimony, the "evidence submitted by the two employees of the convenience store was pretty overwhelming . . . [and] . . . [t]his case was proven way beyond a reasonable doubt, almost beyond any doubt."

Resp't Mem. Supp. Mot. Dismiss, Ex. 2 Court of Appeals of Virginia Opinion (ECF No. 39-2, at 5). Given the strong evidence that the robbery was committed by Lassiter, the state court reasonably held that counsel's performance did not fall outside the "heavy measure of deference" due counsel's judgments. Strickland, 466 U.S. at 691. Lassiter's pleadings here do not plausibly articulate any error in that decision sufficient to state a substantial ineffectiveness claim and obtain review under Martinez.

31

### iv.    Ground 9

In Ground 9, Lassiter alleges that trial counsel was ineffective for failing to move to dismiss on speedy trial grounds.  The state habeas court dismissed this claim and found it failed the Strickland test.  When considering a claim of violation of speedy trial rights under the federal constitution, courts balance four factors: the length of delay, reason for relay, defendant's assertion of his right, and prejudice to the defendant.  Barker v. Wingo, 407 U.S. 514, 530 (1972).  Here, the length of delay was over one year.  However, Lassiter moved for continuances twice based on unavailability and because counsel had to withdraw.  See Resp't Mem. Supp. Mot. Dismiss (ECF No. 39, at 33).  Lassiter also did not object to the trial dates when they were scheduled, and he has failed to show prejudice.  Thus, the state habeas court decision concerning Ground 9 was neither factually nor legally unreasonable.  Because this claim was procedurally defaulted, Lassiter would have to plausibly allege grounds for a substantial claim on this basis.  For the reasons described by the state court, he has not.

### v.    Ground 11

In Ground 11, Lassiter alleges that trial counsel was ineffective for failing to impeach the witness testimony in light of the weakness of the case.  Again, the state habeas court dismissed this claim finding it failed to satisfy the Strickland test.

Trial counsel for the accused "ha[s] an obligation to investigate possible methods for impeaching a prosecution witness, and failure to do so may constitute ineffective assistance of counsel." Tucker v. Ozmint, 350 F.3d 433, 444 (4th Cir. 2003) (citing Huffington v. Nuth, 140 F.3d 572, 580 (4th Cir. 1998)).  Objective reasonableness is the touchstone of the inquiry into counsel's performance.  See Huffington, 140 F.3d at 580.  And in turn, "[t]he reasonableness of the investigation depends, in part, upon the importance of the witness to the prosecution's case."

32

Tucker, 350 F.3d at 444.  If counsel fails to investigate "'a witness who has been identified as crucial,'" then that "'may indicate an inadequate investigation.'"  Huffington, 140 F.3d at 580 (quoting Gray v. Lucas, 677 F.2d 1086, 1093 n.6 (5th Cir. 1982)).  As the Fourth Circuit noted in Huffington and in Tucker, "most of the witnesses whom federal courts have deemed 'crucial' were 'alibi witnesses or eyewitnesses critical to the determination of guilt,' such as self-defense witnesses."  Tucker, 350 F.3d at 444 (quoting Huffington, 140 F.3d at 580).  However, "[p]ost-conviction counsel's backward-looking characterization of the role of any particular witness should have no bearing on this question."  Id. at n.7 (citing Strickland, 466 U.S. at 689-90) (cautioning reviewing courts to evaluate trial counsel's performance "as of the time of counsel's conduct")).

Lassiter's unsupported argument that trial counsel's failure to impeach constituted deficient performance fails to overcome the stout deference this court must give to both trial counsel's strategic decision and the state habeas court's constitutional review.  See Burr v. Lassiter, 513 F. App'x 327, 340 (4th Cir. 2013).  Moreover, Lassiter's counsel did in fact impeach Mr. Ramos, and asked various questions about his felony criminal history.  Randy Lee Lassiter, Jr. No. 1490582 v. Harold W. Clarke, Transcript of Trial Proceedings, Vol. 2, at 12:5–9, 265:1–25, 266:1–25, 277:1–25 (Aug. 29, 2019).  Lassiter fails to allege or proffer any specific additional impeachment of the witnesses he deemed necessary, or how this impeachment would have affected his trial or benefitted his defense.  Accordingly, he has not plausibly alleged a substantial claim of ineffectiveness under Martinez.

### vi. Ground 22

In Ground 22, Lassiter alleges that trial counsel was ineffective for not moving to continue the case when he objected that Petitioner's due process right to a fair trial would be violated if the jailhouse informant Ranuel Ramos was allowed to testify.  Again, the state habeas court dismissed

this claim finding it failed to satisfy the Strickland test. Here, Lassiter makes conclusory allegation

but fails to demonstrate that a continuance was necessary, and it had been granted, how it would

have led to a different result at trial. He describes no error in the state habeas court's decision to

dismiss this claim, and Ground 22 fails to plausibly allege a substantial claim of ineffectiveness.

**D.      The state appellate court's adjudication of grounds 1, 2, and partial 6 was not unreasonable and thus is not subject to federal review.**

Lassiter exhausted Grounds 1, 2, and part of 6 by presenting these claims to the Supreme

Court of Virginia on direct appeal.

**1.      Lassiter properly exhausted Ground 1, 2, and partial 6 in a direct appeal.**

Lassiter exhausted Grounds 1, 2, and part of 6 by presenting these claims to the Supreme

Court of Virginia on direct appeal. These grounds include:

> Ground One: The trial court erred by allowing a jailhouse informant—Ranuel Ramos—to testify at trial because of the Commonwealth's mid-trial Brady disclosures, which violated Petitioner's due process, and the Commonwealth denied Petitioner the right to testify. (direct appeal claim)
>
> Ground Two: The trial court erred in finding the evidence sufficient to convict on identification of robbery and wearing a mask. (direct appeal claim)
>
> Ground Six: The trial court erred in finding the evidence sufficient to convict petitioner of armed robbery . . . .

See Petition (ECF No. 1, at 25–48); Resp't Mem. Supp. Mot. Dismiss (ECF No. 39, at 6–8). Once

a petitioner's state remedies have been exhausted, a federal court still may not grant relief on any

claim that a state court adjudicated on the merits unless the decision was (1) "contrary to, or

involved an unreasonable application of, clearly established Federal law," or (2) "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d)(1)—(2). Therefore, the court is obliged to analyze these claims

under 28 U.S.C. § 2254(d) by assessing the reasonableness of the Court of Appeals of Virginia's

reasoned decision, affirming Lassiter's conviction.  See Ylst v. Nunnemaker, 501 U.S. 797, 805,

111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991) (holding that federal habeas courts looks to the last

reasoned state court decision, as it is presumed the highest court rested its unexplained decision on

the same rationale).

### i.      Ground 1

Regarding Ground 1—Ground A in the State Petition— the Court of Appeals of Virginia

found no error in the trial court's decision:

> Appellant argues that "[t]he Commonwealth's failure to provide any information
> relating to Ramos until mid-trial" violated his due process rights under Brady.
> However, the record shows that the only favorable information the Commonwealth
> was required to give appellant pursuant to Brady was Ramos's criminal record.
> Ramos's record included numerous felony convictions that could be used to
> impeach his credibility. See Bramblett v. Commonwealth, 257 Va. 263, 276 (1999)
> ("Evidence of the prior convictions of a witness is impeachment evidence under
> Brady."). Additionally, his criminal record reflected numerous pending felony
> charges that could be used to show Ramos's bias if he expected leniency in future
> disposition of those charges. See Moreno, 10 Va. App. at 415 (stating that "[b]ias
> as a form of impeachment . . . falls within the Brady requirement to disclose"). In
> contrast, all of the other "information relating to Ramos" — including his name,
> age, and race and the substance of his testimony about appellant's incriminating
> statements while they were housed together — was not favorable evidence subject
> to mandatory disclosure because appellant could not have used that information to
> exculpate himself or impeach Ramos.
>
> Appellant contends that the fact that Ramos was a jailhouse informant constituted
> impeachment evidence.  We disagree.
>
> A defendant may impeach a government informant's credibility by showing that
> the informant received a benefit from the government — such as a promise of
> favorable disposition in a future criminal case — in exchange for his testimony.
> See Giglio v. United States, 405 U.S. 150, 154-55 (1972); Lovitt v. Warden, Sussex
> I State Prison, 266 Va. 216, 246 (2003). "However, when a person does not receive
> a benefit from providing such information, and later testifies as a prosecution
> witness, the mere fact of his prior cooperation with the government agents does not
> constitute impeachment evidence subject to disclosure" under Brady. Lovitt, 266
> Va. at 246.  Here, Ramos did not receive any promised benefit from the
> Commonwealth in exchange for his testimony.  Therefore, Ramos's mere status as
> a jailhouse informant did not constitute impeachment evidence subject to
> disclosure.

\*\*\*

> As the trial court noted and addressed in detail below, two eyewitnesses, who recognized appellant as a regular customer, positively identified appellant in court as the robbery. Further, Kay testified that McClease told him that appellant left their residence on the night of the robbery with his black backpack. Appellant lived only one-half mile in a southwest direction from the crime scene. The robber had a black backpack and left the store walking in a southwest direction. Accordingly, we are able to conclude that substantial justice was reached and that any possible error in the admission of Ramos's testimony did not sway the jury's judgment. We find no error in the trial court's decision.

Resp't Br. Supp. Mot. Dismiss, Ex. 2 Court of Appeals of Virginia Opinion (ECF No. 39-2, at 7–8). Petitioner fails to raise any additional arguments that he believes counsel should have raised regarding the identification as to state action or being impermissibly suggestive, or that these arguments would have been successful at trial or on appeal. Accordingly, he has not offered any reason why the state court decision unreasonably applied federal law or incorrectly determined relevant facts.

### ii.   Ground 2 and Part of Ground 6

In Ground 2, Lassiter alleges that the trial court erred in finding the evidence sufficient to convict on identification of robbery and wearing a mask. Similarly, in Ground 6, Lassiter alleges that the trial court erred in finding the evidence sufficient to convict petition on armed robbery. In reviewing a sufficiency of the evidence claim, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis removed). The reviewing court must consider circumstantial as well as direct evidence, and allow the prosecution the benefit of all reasonable inferences from the facts proven to those sought to be established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

36

As the Supreme Court has expressly recognized, it is wholly the responsibility of the fact-finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences. <u>Jackson</u>, 443 U.S. at 319. In <u>Wright v. West</u>, the Supreme Court expounded upon <u>Jackson</u>, stating:

> In <u>Jackson</u>, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review. We said that "all of the evidence is to be considered in the light most favorable to the prosecution"; that the prosecution need not affirmatively "rule out every hypothesis except that of guilt"; and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

505 U.S. 277, 296–97, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992) (emphasis removed) (internal citations omitted). Under federal habeas review, the court looks to the state court's decision and assesses only whether it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Here, the Court of Appeals of Virginia conducted a full review of Lassiter's claim and concluded that there was sufficient evidence to convict him. Thus, Lassiter is only entitled to relief if that determination was an unreasonable application of the above-cited Supreme Court precedent. The undersigned finds that it was not.

Lassiter was charged and convicted of robbery in violation of Va Code § 18.2-58, and wearing a mask to conceal his identity in violation of Va Code § 18.2-422. Robbery is "the taking with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence of intimidation." <u>Pena Pinedo v. Commonwealth</u>, 300 Va. 116, 122 (Sup. Ct. Va. 2021). Further, "[i]t shall be unlawful for any person over 16 years of age to, with the intent

to conceal his identity, wear any mask, hood, or other device whereby a substantial portion of the face is hidden or covered so as to conceal the identity of the wearer, to be or appear in any public place . . . ." Va Code § 18.2-422.

The evidence presented at trial, which the Virginia Court of Appeals accurately summarized, was sufficient for a reasonable trier of fact to find that Lassiter committed the robbery and attempted to conceal his identity:

> Both Amin and Williford positively identified appellant in the court as the robbery, stating they had no doubts about their identifications. 'The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." Rams v. Commonwealth, 70 Va. App. 12, 26–27 (2019) (quoting Hamilton v. Commonwealth, 279 Va. 94, 105 (2010). In addition, Williford identified appellant from the out-of-court photograph lineup, and both Amin and Williford recognized appellant as a regular customer of the store. During the crime, Amin and Williford had the opportunity to view the robber from a close distance. See Neil v. Biggers, 409 U.S. 188, 199–200 (1972) (listing factors to consider in identification cases, including opportunity to view the criminal and accuracy of their prior descriptions of the criminal). In addition, they both provided law enforcement with descriptions of the robber that were similar to appellant's physical characteristics. See id. Further, Williford testified that the regular customer whom she believed was the robber had purchased Newport cigarettes in the past, and the robber requested Newport cigarettes. Moreover, the jury saw the store's video recordings of the incident, the customer in the store on the day before the incident, and the still photographs made from those recordings. In addition, Kay testified that McClease told him that she believed appellant may have committed the crime and that he left their residence on the night of the robbery carrying his backpack. From the evidence presented, the jury could have concluded that appellant was the robber. "If there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." Clark v. Commonwealth, 279 Va. 636, 641 (2010) (quoting Commonwealth v. Jenkins, 255 Va. 516, 520 (1998)). The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of robbery and wearing a mask to conceal his identity.

Resp't Mem. Supp. Mot. Dismiss, Ex. 3 Court of Appeals of Virginia Per Curium Opinion, at 9–10. The trial court relied on this evidence to render a guilty verdict. The evidence is not inherently incredible or such that any rational trier of fact could not have convicted him. The Court of

Appeals' conclusion that this evidence was sufficient to support Lassiter's conviction was not contrary to or based on an unreasonable application of federal law.  See 28 U.S.C. § 2254(d). Accordingly, Lassiter has not plausibly alleged a due process violation resulting from the sufficiency of the evidence against him.

## V.   REMAINING MOTIONS

In addition to the eighteen (18) motions resolved by prior Order, (ECF No. 51), Lassiter also filed a renewed motion to Appoint Counsel, (ECF No. 52), Motion for Default Judgement, (ECF No. 53), Motion for Bail (ECF No. 54), and Motion for Summary Judgment (ECF No. 55). In light of the analysis set forth above, this Report recommends terminating these motions as moot. Further, Lassiter is not entitled to an appointment of counsel because he does not allege grounds which could require an evidentiary hearing.  Rouse v. Lee, 339 F.3d 238, 238, 250 (4th Cir. 2003) (explaining that counsel is only required if an evidentiary hearing is granted); see also Tyndale v. Dean, 2023 WL 5750413, 2023 U.S. Dist. LEXIS 159110, at *12 ("Having determined an evidentiary hearing is not necessary in this case, the court shall also deny the request for counsel.").

## VI.   CONCLUSION

For the foregoing reasons, I recommend the court GRANT Respondent's Motion to Dismiss, and DENY Lassiter's Petition with prejudice.

/s/
Douglas E. Miller
United States Magistrate Judge
DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
May 9, 2024

A copy of the foregoing was mailed this date to:


**Randy Lee Lassiter, Jr.** #1490582
VA DOC Centralized Mail Distribution Center
3521 Woods Way
State Farm, VA 23160


A copy of the foregoing was provided electronically this date to:


**Lauren Catherine Campbell**
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219


Fernando Galindo, Clerk


By __/s/ J. L. Meyers_____
     Deputy Clerk

     May 9
_____, 2024

40